| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

------------------------------------------------------------ X
JAYENDRA SHAH,

      Plaintiff,

   - against -

MTA NEW YORK CITY TRANSIT, an agency of the METROPOLITAN TRANSPORTATION AUTHORITY, STATE OF NEW YORK, JOHN DOES 1-10, and JANE DOES 1-10,

      Defendants.
------------------------------------------------------------ X

**MEMORANDUM & ORDER**

No. 12 CV 4276 (ERK) (RLM)

KORMAN, J.:

  Jayendra Shah is an Asian male of Indian national origin and has been employed by defendant MTA New York City Transit (the "MTA") since September 1982. Compl. ¶¶ 13-14, ECF No. 14. Throughout his employment by the MTA, Shah has consistently received annual reviews of "good" and "excellent," the top two ratings, or their equivalents. *Id*. ¶ 17. Prior to his employment with the MTA, he was an engineer at three different companies in India, earned a degree in mechanical engineering from Gujarat University in India, and received a master's degree in transportation management from the Maritime College of the State University of New York. *Id*., Ex. C at 2-3, ECF No. 14-3, Ex. D at 1, ECF No. 14-4. He is also licensed as a certified professional engineer by New York State. *Id*., Ex. C at 1, 3.

  Shah was initially hired by the MTA as a road car inspector. *Id*. ¶ 14. During his thirty-year career with the MTA, Shah has been promoted several times. *Id*. ¶ 15. Specifically, Shah was promoted to maintenance supervisor in 1984, to deputy superintendent in 1987, to superintendent in 1991, and to general superintendent in 1995. *Id*. ¶ 15, Ex. C at 1-2. In addition, Shah temporarily served as acting general superintendent for a period of time in 1994

and 1995, *id*. ¶ 15, Ex. C. at 1, as acting assistant chief mechanical officer in March 2008, *id*. ¶ 27, and as deputy line general manager for a period of time in 2009 and 2010, *id*. ¶ 15, Ex. C at 1-2.

The complaint alleges that from 1996 through 2012, Shah applied for several promotions within the MTA which he did not receive, but were "often" given to "even less qualified white/Caucasian employees." *Id*. ¶ 19. Had Shah received one or more of the promotions for which he applied, "he would have received a substantial increase in his annual salary and earned additional Hay Points and, as such, would have received a much higher retirement benefits package." *Id*. ¶ 29.

Between May 2008 and June 2009, Shah applied for the following positions for which he was not granted interviews: a deputy line general manager position in June 2008, a chief mechanical officer position in July 2008, deputy line general manager, line general manager and group general manager positions in August 2008, a maintenance general manger position in November 2008, and a deputy line general manager position in February 2009. *Id.* ¶ 31. During that same time period, Shah applied for the following positions for which he was granted interviews, but was not hired: a deputy vice president position in May 2008 and a line general manager position in May 2009. *Id*. ¶ 32. The MTA filled all of these positions with "other similarly qualified or less qualified white/Caucasian employees." *Id.* ¶¶ 31-32.

At an unspecified point in 2009, the MTA "aborted" the general superintendent positions at the shop where Shah was employed. *Id*. ¶ 28. In June 2009, Shah applied for a deputy line general manager position, which Shah describes as a "demotion" from general superintendent.

2

*Id*. This is the same type of position that Shah describes as a "promotion" he was wrongly denied in February 2009. *See id.* ¶ 31. Shah received this position. *Id.* ¶ 28.

Between June 2009 and May 2011, Shah continued to apply for other promotions within the MTA. Specifically, Shah applied for the following positions for which he was not granted interviews: a vice president/chief mechanical officer position in April 2010, a vice president/chief officer position in June 2010, and an assistant chief mechanical officer position in October 2010. *Id.* ¶ 31. Shah also applied for two assistant chief mechanical officer positions in June 2010 for which he was granted interviews, but was not hired. *Id.* ¶ 32. The complaint alleges that the MTA filled all of these positions with "other similarly qualified or less qualified white/Caucasian employees." *Id.* ¶¶ 31-32.

On May 24, 2011, after the completion of its investigation based on Shah's EEOC charge filed on May 8, 2008, *see id.* ¶ 25, the EEOC issued its determination that the MTA had "discriminated against [Shah] on account of his race, Asian, and national origin, Indian," *id.* ¶ 33. Specifically, the EEOC found that in October 2007 the MTA had "selected and promoted at least 3 individuals with fewer objective qualifications than [Shah] for the position of Line General Manager. These individuals had fewer years of experience than [Shah] in managerial/supervisory positions. Two of the people selected did not even have a college degree." *Id.* Moreover, the EEOC found that with regard to Shah's application for an assistant chief mechanical officer position in January 2008, a comparison of Shah's "credentials . . . with those of the person selected reveals that [Shah] possesses relevant experience as Superintendent of the 207th Street Maintenance Shop, and has a published paper on Scheduled Maintenance Systems." *Id.* ¶ 34. "Regarding both jobs," the EEOC found, "the record shows that [Shah] met

3

or exceeded the objective requirements and that no documentation has been submitted as to the subjective ones, namely management style and approach." *Id*.

Between May and September 2011, Shah applied for only one position – assistant chief mechanical officer – in July 2011, for which he was granted an interview, but not hired. *Id*. ¶ 32. On September 23, 2011, the EEOC advised the parties that efforts to conciliate Shah's EEOC charge were unsuccessful and that it would not make any further efforts. *Id*. ¶ 35. Between September 2011 and May 2012, Shah applied for only one position – vice president/chief mechanical officer – in February 2012, for which he was granted an interview, but not hired. *Id*. ¶ 32. On May 29, 2012, the Civil Rights Division of the U.S. Department of Justice (the "DOJ") informed Shah that it would not file suit on his EEOC charge and that he had a right to sue. *Id*., Ex. B at 1, ECF No. 14-2.

## PROCEDURAL HISTORY

Shah's complaint sets forth five causes of action: (1) the MTA, "acting under the color of law," deprived Shah of his right "to be free of discrimination based upon race" under "the Equal Protection and Due Process guarantees of the Fourteenth Amendment," pursuant to 42 U.S.C. § 1981, *id*. ¶¶ 37-38, (2) "repeated discrimination [by the MTA] in failing to promote [Shah] because of his race, national origin, and retaliation for opposition to discrimination" pursuant to Title VII of the Civil Rights Act, *id*. ¶ 44, (3) "failure to promote" because the MTA "promoted other individuals who were white/Caucasian and/or of different national origin and who had the same or less qualifications for promotion than [Shah]," *id*. ¶ 52, (4) "failure to promote" pursuant to New York Executive Law § 296, *id*. ¶ 57, and (5) discrimination based on Shah's "race, national origin, and opposition to discrimination" pursuant to New York City Administrative

Code § 8-107(1), *id*. ¶ 63. Shah seeks $3 million in compensatory damages and $3 million in punitive damages, as well as injunctive relief. *Id*. ¶¶ 67-70.

On October 29, 2012, the MTA filed this motion to dismiss in part, requesting the following relief: (1) dismissal of "the *Monell* claim" and all claims "under 42 U.S.C. §§ 1981 and 1983," except for claims relating to employment actions subsequent to August 24, 2009 (first cause of action), (2) dismissal of all claims under Title VII, except for claims relating to the two employment actions raised in Shah's EEOC charge (second cause of action), (3) dismissal of the cause of action for "failure to promote" (third cause of action), (4) dismissal of all claims under New York State and City law predicated on conduct that occurred before August 24, 2009, except for claims relating to the two employment actions raised in Shah's EEOC charge (fourth and fifth causes of action). Def. Mem. at 15, ECF No. 7.

## DISCUSSION

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "'[t]he court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor.'" *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (quoting *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

I.   *Shah's Post-Complaint Affidavit and Exhibits*

In addition to Shah's memorandum of law in opposition to the MTA's motion, he submitted an affidavit and appended several exhibits thereto. *See* Shah Aff. & Exs. A-X, ECF

Nos. 11 to 11-5. The MTA opposes the consideration of these documents at this stage of the litigation. Def. Rep. Mem. at 3-4, ECF No. 13. Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). "'To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents . . . . [and] [t]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint.'" *Johnson v. Levy*, 812 F. Supp. 2d 167, 177 (E.D.N.Y. 2011) (quoting *DeLuca v. AccessIT Grp., Inc.,* 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)).

Here, Shah submitted twenty-four exhibits with his affidavit, some of which contain more than one document. Nearly all of these exhibits were not referenced in the complaint. Specifically, the complaint made no reference to the following documents: (1) a letter from the EEOC dated June 3, 2008, Shah Aff., Ex. A at 1, (2) emails between Shah and the EEOC or the DOJ, *id.*, Exs. B-K, M-R, T-W, and (3) an EEOC complaint intake form dated July 12, 2012, *id.*, Ex. X. Because they are neither incorporated into nor integral to the complaint, these exhibits cannot be considered herein. *See Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 268 (E.D.N.Y. 2011). Nevertheless, there are two exhibits to Shah's affidavit which were referenced in the complaint. Specifically, the complaint referenced the following documents: (1) Shah's EEOC charge and related forms filed therewith on May 8, 2008, Shah Aff., Ex. A at 2-10; *see* Compl. ¶¶ 8, 25, and (2) the EEOC's notice of conciliation failure dated September 23, 2011, Shah Aff., Ex. S; *see* Compl. ¶ 35. The MTA had possession of copies of these two exhibits

prior to the initiation of this action and both documents were relied upon in the complaint. Because they are incorporated by reference and integral to the complaint, these two documents will be considered herein. *See Chambers v. Time Warner Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 204 (E.D.N.Y. 2006) ("Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference.").[1]

II. *First Cause of Action: Racial Discrimination Under 42 U.S.C. §§ 1981 and 1983*

The first cause of action, purportedly brought pursuant to 42 U.S.C. § 1981, alleges that the MTA, "acting under the color of law," undertook "willful and malicious" actions which deprived Shah of his right "to be free of discrimination based upon race" under "the Equal Protection and Due Process guarantees of the Fourteenth Amendment." Compl. ¶¶ 37-38. Shah further alleges that the MTA "ha[s] similarly violated the rights of other employees all as part of a deliberate policy and a deliberate course of conduct." *Id.* ¶ 40. Although Shah's complaint does not make reference to § 1983, his first cause of action must be construed as one brought pursuant to that statute because "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820 (1976)).

The MTA, as a municipal entity, may only be held liable under § 1983 when the alleged unlawful action was implemented or executed pursuant to a governmental policy or custom. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *Reynolds v. Guiliani*,

---

[1] The EEOC determination dated May 24, 2011, Shah Aff., Ex. L, was attached to the complaint as Exhibit A, ECF No. 14-1. Thus, it will also be considered herein.

506 F.3d 183, 190 (2d Cir. 2007). The MTA may not be held liable under § 1983 on a theory of vicarious liability. *See Monell*, 436 U.S. at 691. Claims against municipalities under § 1983 are not subject to a heightened pleading standard. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). Nevertheless, such claims must meet the requirements of Rule 8 of the Federal Rules of Civil Procedure and satisfy the plausibility standard articulated in *Iqbal* and *Twombly*. *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011). Moreover, "boilerplate allegations of unconstitutional policies and practices" are insufficient to survive a motion to dismiss for failure to state a claim. *Id*.

Here, the complaint lacks sufficient factual details concerning *Monell* liability and contains mere conclusory statements regarding the MTA's alleged unconstitutional policies and practices. *See* Compl. ¶¶ 40-41. Specifically, Shah alleges that the MTA has "similarly violated the rights of other employees all as part of a deliberate policy and a deliberate course of conduct" through its "wrongful, reckless and intentional acts." *Id*. Nevertheless, there are no further factual allegations in the complaint regarding this "policy." These allegations are insufficient to state a cause of action against the MTA on these grounds. *See Edwards v. Jericho Union Free Sch. Dist.*, --- F. Supp. 2d ----, 2012 WL 5817281, at *11 (E.D.N.Y. 2012); *Plair*, 789 F. Supp. 2d at 469 ("[T]he mere assertion . . . that a municipality has such a custom is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").

III.   *Second Cause of Action: Claims Pursuant to Title VII of the Civil Rights Act*

The second cause of action arises from Shah's allegations of "repeated discrimination [by the MTA] in failing to promote [Shah] because of his race, national origin, and retaliation for opposition to discrimination" pursuant to Title VII of the Civil Rights Act. Compl. ¶ 44.

A.     *Statute of Limitation: Claims Pre-Dating July 13, 2007*

Shah filed his EEOC charge on May 8, 2008 on the basis of the MTA's denials of his promotion to line general manager in October 2007 and to assistant chief mechanical officer in January 2008.  *Id*. ¶ 25; Pl. Mem. at 12, ECF No. 11.  Shah's complaint in this action includes Title VII claims arising from the MTA's denials of promotion in 2004 and 2005.  *See*, *e.g.*, Compl. ¶¶ 19-22.  The MTA argues that the claims based on incidents which occurred in 2004 and 2005 are barred as untimely.  Def. Mem. at 12-13.  Indeed, the parties agree that the statute of limitation for filing a claim pursuant to Title VII is 300 days and that failure to file a timely EEOC charge within that time period renders a claim time-barred.  *Id*. at 12; Pl. Mem. at 12; *see also Lewis v. N.Y.C. Police Dep't*, --- F. Supp. 2d. ----, 2012 WL 5467551, at *6 (E.D.N.Y. 2012).  Nevertheless, Shah argues that the 2004 and 2005 incidents are actionable under the "continuing violation doctrine."  Pl. Mem. at 12.

Under the continuing violation exception to the statute of limitation, "a plaintiff who files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been barred by the statute of limitations."  *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) (citation omitted).  The Supreme Court, however, has held that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Indeed, a failure to promote is a "discrete act" that does not trigger the continuing violation exception.  *Id*. at 114; *Workneh v. Pall Corp.*, --- F. Supp. 2d ----, 2012 WL 4845836, at *6 (E.D.N.Y. 2012); *Gross v. Nat'l Broad.*

*Co., Inc.*, 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002) ("[A]lleged failures to . . . promot[e] cannot form the basis for a continuing violation claim.").

Nevertheless, the Supreme Court observed that "[t]here may be circumstances where it will be difficult to determine when the time period should begin to run [even for a discrete act]. One issue that may arise in such circumstances is whether the time begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered." *Morgan*, 536 U.S. at 114 n.7. The context in which this comment was made followed the Supreme Court's citation to the district court's holding in that case that "Morgan believed that he was being discriminated against at the time that all of these acts occurred." *Id*. (quotation marks and citation omitted). This would strongly suggest that where a plaintiff is unaware for some time that his employer acted with discriminatory intent in taking an adverse employment action, the claim of discrimination accrues from the date the employee "knows or has reason to know of the injury which is the basis of his action." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994); *see also Vuong v. N.Y. Life Ins. Co.*, No. 09-CV-1075 (TPG), 2009 WL 306391, at *7 (S.D.N.Y. Feb. 6, 2009). As then-Chief Judge Breyer observed:

> A knowing plaintiff has an obligation to file promptly or lose his claim. This can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern. After all, [e]mployers as well as employees are entitled to procedural safeguards in the precincts patrolled by Title VII.

*Sabree v. United Bhd. of Carpenters & Joiners Local 33*, 921 F.2d 396, 402 (1st Cir. 1990) (internal quotations and citations omitted); *see also Johnson v. Nyack Hosp.*, 891 F. Supp. 155, 165-66 (S.D.N.Y. 1995), *aff'd on other grounds*, 8 F.3d 8 (2d Cir. 1996).

Shah does not argue that he comes within the possible exception to the holding in *Morgan*, nor does the complaint contain any allegations that would bring it within that exception. Consequently, Shah's Title VII claims that are predicated on conduct pre-dating July 13, 2007 are time-barred, although those denials of promotion may still be admissible as evidence in support of his timely claims. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) ("A discriminatory act which is not made the basis for a timely charge . . . may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue."); *Vernon v. Port Auth. of N.Y. & N.J.*, 200 F. Supp. 2d 401, 403 (S.D.N.Y. 2002).

B.  *Exhaustion of Administrative Remedies: Claims Post-Dating July 13, 2007*

Shah's EEOC charge, filed in May 2008, was based on two incidents: the denials of his promotion to line general manager in October 2007 and to assistant chief mechanical officer in January 2008. Compl. ¶ 25. Nevertheless, there are many other incidents described in the complaint which took place subsequent to July 13, 2007, but were not included in Shah's EEOC charge. *See*, *e.g.*, *id*. ¶¶ 31-32. The MTA argues that these other incidents are barred because Shah has not exhausted his administrative remedies. Def. Mem. at 8-12. In response, Shah argues that the other incidents do not require administrative exhaustion because they are "reasonably related" to the conduct alleged in the EEOC charge. Pl. Mem. at 5-11. Since exhaustion is an affirmative defense, *see Boos v. Runyon,* 201 F.3d 178, 182 (2d Cir. 2000), the MTA bears the burden of establishing Shah's failure to timely exhaust his administrative remedies, *see Broich v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 246 (E.D.N.Y. 2009).

A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably

related" to that alleged in the EEOC charge. *Bland v. New York*, 263 F. Supp. 2d 526, 546-47 (E.D.N.Y. 2003). This exhaustion requirement is an essential element of Title VII's statutory scheme. The purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC. *Stewart v. U.S. Immigration & Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985).

The Second Circuit has "recognized three situations in which claims not raised in an [EEOC] charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action: 1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; 2) where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge; and 3) where the complaint alleges further incidents of discrimination carried out in the same manner alleged in the EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (citations and quotation marks omitted). "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008).

Shah argues, among other things, that the incidents that occurred after the filing of the EEOC charge on May 8, 2008 are reasonably related because they were carried out in the same manner alleged in the EEOC charge. Pl. Mem. at 11.[2] Defendants do not respond to this argument. *See* Def. Rep. Mem. at 3-5. The EEOC charge was based on the denials of his

---

[2] None of the alleged incidents of discrimination occurred between July 13, 2007 and the filing of the EEOC charge on May 8, 2008.

promotion to line general manager in October 2007 and to assistant chief mechanical officer in January 2008, Shah Aff., Ex. A at 2, despite his "superior qualifications" for both positions, *id*., Ex. A at 7. Specifically, Shah alleged he was denied these promotions on the basis of his race and national origin, *id*., Ex. A at 2., because he "was not Caucasian," *id*., Ex. A at 7. Similarly, Shah's complaint alleges that the denials of promotion that post-date May 8, 2008 were the result of discrimination based on his race and national origin, and that those positions were awarded to "other similarly qualified or less qualified white/Caucasian employees." Compl. ¶ 31-32. Because the incidents of discrimination that post-date May 8, 2008 were carried out in the same manner alleged in the two incidents named in the EEOC charge, they are properly raised in this action. *See Worrell v. Cortines*, No. 90-CV-3142 (JG), 1995 WL 1079717, at *6 (E.D.N.Y. Mar. 26, 1995).

IV.     *Third Cause of Action: "Failure to Promote"*

The third cause of action, as stated in the complaint, is for "failure to promote" because the MTA "promoted other individuals who were white/Caucasian and/or of different national origin and who had the same or less qualifications for promotion than [Shah]." Compl. ¶ 52. In his memorandum of law, Shah alleges that this cause of action is "premised upon the cause of action under Title VII." Pl. Mem. at 18. There is nothing in the complaint or Shah's memorandum from which one could conclude that the grounds for this claim are distinct from his second cause of action, also brought pursuant to Title VII. Thus, this cause of action is duplicative.

V.       *Fourth and Fifth Causes of Action: Claims Pursuant to State and City Law*

The fourth and fifth causes of action are for "failure to promote" pursuant to New York Executive Law § 296, Compl. ¶ 57, and discrimination based on Shah's "race, national origin, and opposition to discrimination" pursuant to New York City Administrative Code § 8-107(1), *id.* ¶ 63. Claims brought pursuant to these provisions may be filed three years from the date of any allegedly discriminatory act. N.Y. C.P.L.R. § 214(2); N.Y. City Admin. Code § 8-502(d). The MTA argues that the claims asserted under these provisions that are predicated on conduct that occurred prior to August 24, 2009 (three years prior to the filing of this action), except for the claims relating to the two incidents on which the EEOC charge was based, are time-barred. Def. Mem. at 13. In response, Shah argues that the statutes of limitation were tolled during the period of time his EEOC charge was pending. Pl. Mem. at 17-18. The MTA bears the burden of proof on this issue. *See Butler v. N.Y. Health & Racquet Club*, 768 F. Supp. 2d 516, 536 (S.D.N.Y. 2011).

The statutes of limitation for these provisions are "tolled during the period in which a complaint is filed with the EEOC." *Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 373 (S.D.N.Y. 2008). Specifically, the toll is in effect for the period of time between the filing of the EEOC charge and when a plaintiff receives a right to sue from the DOJ. *Lee v. Overseas Shipholding Grp., Inc.*, No. 00-CV-9682 (DLC), 2001 WL 849747, at *8 (S.D.N.Y. July 30, 2001) (citing *Martinez-Tolentino v. Buffalo State Coll.*, 715 N.Y.S.2d 554, 555 (N.Y. App. Div. 2000) (4th Dep't)). "This means that some of Plaintiff's time barred federal discrimination claims [may not be] time barred under state and local law." *Siddiqi*, 572 F. Supp. 2d at 373.

Here, the EEOC charge was filed on May 8, 2008, Compl. ¶ 25, which stopped the running of the statutes of limitation until Shah received a right to sue on May 29, 2012, *id.*, Ex B at 1, at which point the statutes of limitation began to run again. This action was filed on August 24, 2012 – eighty-seven days after Shah received a right to sue. The net effect of the tolling is to preclude the statutes of limitation from barring incidents that post-date October 30, 2005.[3] Nevertheless, the incidents that pre-date October 30, 2005 may still be admissible as evidence in support of Shah's timely claims. *See United Air Lines, Inc.*, 431 U.S. at 558; *Vernon*, 200 F. Supp. 2d at 403.

## CONCLUSION

The MTA's motion to dismiss is granted in part. The first and third causes of action are dismissed. The claims in the second cause of action that pre-date July 13, 2007 are dismissed. The claims in the fourth and fifth causes of action that pre-date October 30, 2005 are dismissed. Shah's unopposed motion for leave to amend the complaint, Pl. Mem. at 19-21, is granted. *See Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."). The amended complaint must be filed within sixty days of this Memorandum and Order.

SO ORDERED.

Brooklyn, New York
February 8, 2013

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge

---

[3] This takes account of the eighty-seven days between the end of the toll on May 29, 2012 and the filing of this action on August 24, 2012.